**Benjamin Haile**, OSB #04066
ben@portlandlawcollective.com
Portland Law Collective, LLP
1130 SW Morrison St., Suite 407
Portland, OR  97205
Tel: 503-228-1889
Fax: 503-223-4518
Attorney for the Plaintiff

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| CAROLE CRANE | Civil No.  09-CV-1303-HA |
|        Plaintiff, | |
|   vs. | |
| DENNIS ALLEN, DEPUTY JOSHUA POMEROY, MULTNOMAH COUNTY, SERGEANT JESSE LUNA, AND DEPUTY SYDNEY WATSON, | FIRST AMENDED COMPLAINT<br><br>DEMAND FOR JURY TRIAL |
|        Defendants. | |

## INTRODUCTION

1.

In the spring of 2008, while Ms. Crane was an inmate in the Multnomah County

Detention Center, she was sexually harassed, touched, manipulated and preyed upon by her

counselor, Dennis Allen, a 19 year employee of the Multnomah County Sheriff's Office.  Mr.

Allen required Ms. Crane to meet with him for long periods at a table that was partially hidden

behind a pillar in the open area of her unit.  At the table, he required her to submit to offensive

touching of her genitals and other parts of her body.  He used his power to manipulate Ms. Crane

1 – FIRST AMENDED COMPLAINT

by offering various small favors and presents.  He also pretended to write letters advocating for

Ms. Crane's release, and he urged her to open a bank account to launder stolen money for her.

2.

When Ms. Crane threatened to report the abuse, he laughed and told her no-one would

believe her.  Ms. Crane was terrified of retaliation by Mr. Allen and other jail staff if she

reported him.  Ms. Crane slowly accumulated proof of the abusive relationship, including letters

that he wrote to her, and information about his personal life that he revealed to her.  While he

was away on vacation, she found the courage to report him to a deputy in the jail.  An

investigation ensued, and Mr. Allen was prosecuted for his misconduct and fired from his

position as a counselor.  He was convicted of Official Misconduct and Attempted Custodial

Sexual Misconduct on January 8, 2009.

3.

Shortly after reporting the abuse by Mr. Allen, Ms. Crane began to experience retaliation

from jail staff.  Abuse included being placed in a cell that was littered with garbage, with only

hot water to drink, while being denied adequate clothing and denied sanitary pads to absorb her

menstrual blood.

4.

Ms. Crane brings the claims in this complaint to receive compensation for the humiliation

and anxiety caused by the misconduct of Mr. Allen and by the deputies who retaliated against

her.

4A.

This court has jurisdiction over the plaintiff's claims of violations of federal

constitutional rights under 28 U.S.C. 1331 and 1343.  This court has pendent and supplemental

jurisdiction over the plaintiff's claims arising under state law pursuant to 28 U.S.C. 1367 and Federal Rule of Civil Procedure 18.

## THE PARTIES

5.

The plaintiff, Carole Crane (hereinafter Ms. Crane), resided in the Multnomah County Detention Center located at 1120 SW 3rd Avenue in the City of Portland, County of Multnomah, State of Oregon at all time when contact with Dennis Allen occurred.  Ms. Crane is a citizen of the State of Oregon and the United States of America.

6.

Ms. Crane we detained in the Multnomah County Detention Center for the U.S. Marshall Service due to criminal charges pending in the U.S. District Court for the District of Oregon.

7.

Defendant, Dennis Allen, was working under color of law for defendant Multnomah County as an employee of the Multnomah County Sheriff's Office at all times when he had contact with Ms. Crane.  Mr. Allen is sued in his individual capacity for violations of Ms. Crane's rights protected by the Fourth Amendment to the United States Constitution.

8.

Defendant Joshua Pomeroy, DPSST #39458, was working under color of law for defendant Multnomah County as an employee of the Multnomah County Sheriff's Office at all material times.  Deputy Pomeroy is sued in his individual capacity for violations of Ms. Crane's right protected by the Fourth Amendment to the United States Constitution.

9.

Defendant Multnomah County is a municipal entity, organized under the laws of the State of Oregon with the capacity to sue and be sued.  The County is the legal and political entity responsible for the actions of the Multnomah County Sheriff's Office and its officials and employees.   The County is sued in its own right for failure to adequately supervise it's employees, a claim arising under 42 U.S.C. 1983, and for assault, battery, and sexual harassment by its officials, agents, and employees, claims arising under the Oregon Tort Claims Act.

10.

Additional defendants may be added by amendment of this complaint as their identities and roles become known to the plaintiff.

10A.

Sergeant Jesse Luna, DPSST #15324, was working under color of law for defendant Multnomah County as an employee of the Multnomah County Sheriff's Office at all material times.  Sergeant Luna is sued in his individual capacity for actions, including supervisory actions, that caused violations of Ms. Crane's rights protected by the United States Constitution.

10B.

Deputy Sydney Watson, DPSST #19366, was working under color of law for defendant Multnomah County as an employee of the Multnomah County Sheriff's Office at all material times.  Deputy Watson is sued in his individual capacity for actions that violated Ms. Crane's rights protected by the United States Constitution.

## THE FACTS

### 11.

In the spring of 2008, while Ms. Crane was an inmate at the Multnomah County Detention Center, Mr. Allen used his power as a jail counselor to compel Ms. Crane to submit to harassment and offensive sexual contact. He did so in part by requiring her to meet with him for long periods with him at a table in the open floor of the unit in which she was detained. The table was partially obscured from view by a structural support pillar.

### 12.

While at the table, on multiple occasions, Mr. Allen touched Ms. Crane's breasts, thighs, abdomen, and placed his fingers inside her vagina.

### 13.

Many of the times when Mr. Allen met with Ms. Crane at the table occurred while Deputy Pomeroy was the only sheriff's deputy assigned to the unit. Mr. Allen stated to Ms. Crane that he preferred to meet with her while Deputy Pomeroy was the only deputy on the unit.

### 14.

Mr. Allen used his position of power as a jail counselor in many ways to control Ms. Crane, including: (a) pretending to write letters to the judge presiding over the criminal charges for which Ms. Crane was in custody, the Honorable Anna Brown, (b) offering to open a bank account for Ms. Crane, (c) offering to help her retain a private attorney to litigate her defense to the charges for which she was in custody, (d) allowing her access to a confidential telephone to which other inmates did not have access, (e) bringing presents to Ms. Crane, which she did not accept, (f) contacting Ms. Crane's family members on her behalf, (g) giving money to Ms.

Crane's family members to deposit in her trust account in the jail, (h) relaying information to Ms. Crane from her family members.

15.

In June 2009, Mr. Allen withheld basic services from Ms. Crane that he had a duty to provide.

16.

Mr. Allen told Ms. Crane that he would deny that he was having any sexual contact with her.  He also told her that no person in authority would believe her if she reported the sexual contact.  Ms. Crane believed him.  She also feared retaliation from Mr. Allen and others in the jail if she reported the sexual contact.  Ms. Crane was very afraid of Mr. Allen.

17.

Mr. Allen was aware that Ms. Crane suffered from chronic physical illness and that she was mentally disabled.

18.

Ms. Crane set about accumulating proof that Mr. Allen was having unwanted sexual contact with her.  She elicited information about Mr. Allen's family from him that no inmate should know.  She saved up the letters that Mr. Allen wrote to her, divided them, and stored some in her cell and some in another inmate's cell.  She elicited details about where he bought the presents that he tried to give her, so that his purchase of the items could be confirmed.

19.

On June 27, 2008, while Mr. Allen was away on vacation, Ms. Crane found the courage to report his actions to the authorities.  Following an investigation, Mr. Allen was prosecuted for his conduct and convicted of Official Misconduct and Attempted Custodial Sexual Misconduct.

20.

In July and August, 2008 Ms. Crane experienced harassment and retaliation from staff at the Multnomah County Detention Center.  Retaliation included being placed in a cell in lockdown that was littered with garbage, with only hot water to drink, while being denied adequate clothing and denied sanitary pads to absorb her menstrual blood from August 19 to 22, 2008.  Retaliation also included allowing male inmates to watch her in her inadequate clothing while she was out of her cell for a daily walk in lockdown.  Retaliation also included denial of access to money deposited on her account at the jail, and limiting access to the telephone in July and August 2008, and throwing her mail into her cell, in August 2008.

21.

On August 28, 2008, the U.S. Marshall Service transferred Ms. Crane to the Northern Oregon Correctional Institute (NORCOR) in The Dalles, Oregon.

22.

This transfer was due to the problems Ms. Crane was experiencing in the Multnomah County Detention Center.

23.

On September 25, 2008, Ms. Crane was transferred from NORCOR to the Columbia County Jail, where she remained until June 2009.

24.

Ms. Crane repeatedly requested mental health counseling in the Columbia County jail. Jail medical staff also requested mental health counseling on her behalf.  Due to a lack of resources at the jail, no mental health counseling was ever provided to Ms. Crane.

25.

Mental health counseling was available and provided to Ms. Crane at the Multnomah County Detention Center beginning on July 24, 2008 and ending upon her transfer to NORCOR.

**THE CLAIMS**

**FIRST CLAIM FOR RELIEF:**

**Unreasonable Seizure in Violation of the Fourth Amendment (as a pretrial detainee); Cruel and Unusual Punishment in Violation of the Eighth Amendment (as a convicted detainee); and Equal Protection Violation in Violation of the Fourteenth Amendment:**

**(Against Mr. Allen and Deputy Pomeroy for a claim arising under 42 U.S.C. § 1983)**

26.

All paragraphs above are incorporated by reference herein.

27.

The conduct of Mr. Allen in intentionally causing Mr. Crane to submit to unwanted harassment and offensive sexual contact violated her rights under the Fourth Amendment to the United States Constitution to be free from an unreasonable seizure by public officials, her Eighth Amendment right to be spared from cruel and unusual punishment, and her Fourteenth Amendment right to equal protection of the law.

28.

Mr. Allen intentionally used his public office and power as Mr. Crane's counselor to force her to submit to unwanted sexual advances, unwanted sexual harassment, and unwanted sexual touching.

29.

Deputy Pomeroy was aware of the unwanted and offensive sexual misconduct by Mr. Allen.  Deputy Pomeroy had a duty to protect Ms. Crane from this misconduct.  In choosing to disregard his duty to protect Ms. Crane, Deputy Pomeroy violated her rights under the Fourth Amendment to the United States Constitution to be free from an unreasonable seizure by public officials, her Eighth Amendment right to be spared from cruel and unusual punishment, and her Fourteenth Amendment right to equal protection of the law.

30.

A cause of action for these violations of constitutional rights is provided by 42 U.S.C. § 1983.

**SECOND CLAIM FOR RELIEF**

**Retaliation: Unreasonable Seizure in Violation of the Fourth Amendment;**

**Cruel and Unusual Punishment in Violation of the Eighth Amendment, and**

**Summary Punishment in Violation of the Fourteenth Amendment:**

**(Against Deputy Sydney Watson and Sergeant Jesse Luna, for a claim arising under**

**42 U.S.C. § 1983)**

31.

All paragraphs above are incorporated by reference herein.

32.

Money was posted to Ms. Crane's jail account by relatives on or about July 12 and July 16, 2008 but was not credited to her account for over one week.

33.

On or about July 18, 2008 a visit by her fiancée, Phillip Maddox was denied without cause.

34.

In mid July 2008, Ms. Crane was denied clean bed sheets for many days while her sheets were soiled with her menstrual blood.

35.

In August 2008 medical staff refused a request from Ms. Crane for band aids, and told her that she had to buy them from the commissary. Band aids were not for sale in the commissary.

36.

On or about August 19, 2009 a deputy believed to be Deputy Flanagan forced Ms. Crane to stand for a long period in a sally port while waiting to meet with a representative of her attorney. When Ms. Crane complained of back pain, Deputy Flanagan told her to come back into her unit and pretended to unlock the door but left it locked. This caused Ms. Crane to push futilely on the door for some time.

37.

Deputies, believed to include Deputy Sydney Watson, Deputy Hilts, and Deputy Blackmun placed Ms. Crane in a cell littered with garbage with only hot running water for four days beginning August 19, 2009, and denied adequate clothing for most of that period.

38.

While being denied adequate clothing, Ms. Crane was forced to walk in front of the cells of male inmates during her daily walk periods while in Unit 4. During these walks, deputies

intentionally left the slots in the doors to inmate cells open, allowing male inmates to look at Ms. Crane.

39.

A deputy believed to be Deputy Plots threw Ms. Crane's hygiene kit through the slot in the door to her cell in 10 separate throws, scattering items throughout her cell on or about August 19, 2009.

40.

A deputy believed to be Deputy Blackmun threw Ms. Crane's mail through the slot in her door causing it to land all over her cell.

41.

On numerous instances in July and August 2008, deputies were unusually and unreasonably rough with Ms. Crane, including incidents when she was being escorted and when she was being searched.

42.

This conduct by deputies was taken in retaliation against Ms. Crane for reporting that Mr. Allen sexually harassed and abused her.

42A.

By failing to adequately supervise and discipline deputies under his supervision, Sergeant Luna caused retaliation in violation of her constitutional rights to continue during the months of July and August, 2008.

**THIRD CLAIM FOR RELIEF:**

**Constitutional Rights Violations by Multnomah County for Policy, Pattern**

**or Practice, A Claim Arising Under 42 U.S.C. 1983:**

**(Against Multnomah County)**

43.

All paragraphs above are incorporated by reference herein.

44.

Multnomah County was alerted to the risk that jail staff would sexually harass and victimize inmates. Multnomah County failed to adequately supervise, train, and discipline employees of the Multnomah County Sheriff's Office working within the Multnomah County Detention Center to prevent inmates from being subjected to sexual harassment and offensive sexual contact from employees.

45.

As a direct and proximate result of the failure of Multnomah County to supervise, train, and discipline employees of the Multnomah County Sheriff's Office working within the Multnomah County Detention Center, Ms. Crane was deprived of her Fourth Amendment right to be free from unreasonable seizure and her Eight Amendment protection from cruel and unusual punishment.

46.

Multnomah County was aware of and consciously disregarded the risk that Ms. Crane would be subjected to retaliation for reporting the misconduct of Mr. Allen. Multnomah County failed to take adequate measures to protect Ms. Crane from retaliation.

47.

As a direct and proximate result of the failure to protect Ms. Crane from retaliation, Ms. Crane was subjected to the retaliation described above.

## FOURTH CLAIM FOR RELIEF

**Battery, Sexual Harassment, and Intentional Infliction of Emotional Distress:**

**(Against Multnomah County per ORS 30.265)**

48.

All paragraphs above are incorporated by reference herein.

49.

In taking the actions described above, Mr. Allen intentionally subjected Ms. Crane to physical contact of a sexual nature which was offensive.

50.

In taking the actions described above, Mr. Allen intentionally engaged in conduct that caused Ms. Crane to suffer from intimidation, fear, domination, and extreme mental anguish.

51.

Mr. Allen singled out and discriminated against Ms. Crane because of her sex, race, confinement, and poor mental health.

51A.

In taking the retaliatory actions in July and August that are described above, deputies intentionally and unlawfully engaged in conduct that caused Ms. Crane to suffer from intimidation, fear, and extreme mental anguish.

## FIFTH CLAIM FOR RELIEF

**Discrimination in Place of Public Accomodation, in Violation of ORS 659A.400-406**

*DELETED FROM AMENDED COMPLAINT*

## SIXTH CLAIM FOR RELIEF

**Negligence: (Against Multnomah County per ORS 30.265)**

55.

Paragraphs 1 through 33 are incorporated by reference herein.

56.

Multnomah County and its jail employees have a duty to take reasonable care to prevent people in their custody from being subjected to sexual harassment and offensive sexual contact.

57.

In allowing Mr. Allen to engage in the conduct described above, Multnomah County and its employees breached their duty to prevent harm to Ms. Crane while she was in their custody.

.

58.

Multnomah County and its employees in the jail have a duty to take reasonable care to prevent people in their custody from being subjected to retaliation for reporting misconduct by jail staff.

59.

In allowing jail staff to engage in the retaliatory conduct described above, Multnomah County and its employees breached their duty to prevent harm to Ms. Crane while she was in their custody.

**DAMAGES**

**(All Claims)**

60.

Ms. Crane was extremely humiliated and traumatized by the conduct of Mr. Allen. She has a recurring fear that men are trying to look at her. She experiences this fear particularly when men come to her cell and when she is trying to fall asleep. Her self esteem and confidence have been reduced. She suffers from an increased feeling of powerlessness and hopelessness. She suffers from recurring nightmares and sleeplessness. She suffers from bulimia nervosa.

61.

Physical symptoms of emotional distress included aggravation of preexisting medical conditions, including hair loss, weight loss, and racing heart rate.

62.

Ms. Crane's ability to trust and be intimate with her husband, Phillip Maddox has been reduced.

63.

Ms. Crane suffered from fear and distrust of The Honorable Anna Brown, the judge presiding over her criminal cases, due to Ms. Crane's belief that the judge was biased against her by her report of Mr. Allen's misconduct.

64.

Ms. Crane suffered from constant fear of retaliation from jail staff from the date she reported the conduct of Mr. Allen until the date she was moved to NORCOR.

65.

Ms. Crane was extremely humiliated and frightened by retaliation against her.

66.

As a result of the transfer to NORCOR on August 28, 2008, Ms. Crane suffered loss of contact with her loved ones including her daughter, Lakesha Crane, and her fiancée at the time, Phillip Maddox due to the distance of the jail from Portland.

67.

As a result of the transfer to NORCOR, Ms. Crane suffered economic harm due to the loss of all of the commissary items she possessed at the time that she was transferred.

68.

Ms. Crane continued to suffer from fear of retaliation while she was at NORCOR.

69.

Upon being transferred from NORCOR to the Columbia County Jail, Ms. Crane experienced fear of racial hostility and ongoing fear of retaliation.

70.

While in the Columbia County Jail, Ms. Crane experienced the inconvenience of being transported 30 miles to and from each court appearance instead of being transported one city block from the Multnomah County Detention Center.

71.

As a result of the transfer to the Columbia County Jail on September 25, 2008, Ms. Crane suffered from the denial of access to any mental health counseling. This aggravated her difficulty sleeping, nightmares, fear of male staff, fear of retaliation, frustration with racially

motivated hostility from inmates, and her difficulty coping with the ongoing humiliation and trauma caused by Mr. Allen's misconduct.

72.

Ms. Crane is reasonably likely to suffer from loss of affection of her husband, low self esteem, distrust of men, and humiliation in the future.

73.

The harm to Ms. Crane, both past and future, is valued at $600,000.

**ALL COUNTS**

74.

Plaintiff is entitled to an award of attorneys fees and costs, pursuant to 42 U.S.C. §1988.

77.

The plaintiff gives notice of her intention to move to amend her complaint to include a demand for punitive damages.

78.

Plaintiff requests a trial by a jury of her peers on her claims for relief.

**PRAYER FOR RELIEF**

WHEREFORE Plaintiff prays for judgment as follows:

1.  An award of economic and noneconomic damages in the amount of $600,000 for physical pain and emotional distress including memory loss, anxiety, and fear of police;

2.  Plaintiff's costs, disbursements and attorney fees.

3.  Such other and further relief, including all appropriate equitable relief, as the Court may deem proper and just.

Dated this 17th day of August, 2010.

*/s/ Benjamin Haile*

_____
Benjamin Haile OSB #04066
Attorney for the Plaintiff