IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

CAROLE CRANE,

                    Plaintiff,

    v.

DENNIS ALLEN, DEPUTY JOSHUA
POMEROY, MULTNOMAH COUNTY,
SERGEANT JESSE LUNA, and
DEPUTY SYDNEY WATSON,

                    Defendants.

No. 3:09-CV-1303-HZ

OPINION AND ORDER

Carole Crane, Pro se
70103065
FCI WASECA
Inmate Mail/Parcels
1000 University Dr, SW
P.O. BOX 1731
WASECA, MN 56093

    Pro se Plaintiff

1 - OPINION AND ORDER

Joshua J. Stellmon
Christopher G. Lundberg
HAGLUND KELLEY JONES & WILDER
200 SW Market Street, Suite 1777
Portland, OR 97201

    Attorneys for Defendant Dennis Allen

Susan M. Dunaway
MULTNOMAH COUNTY ATTORNEY
501 S.E. Hawthorne Boulevard, Suite 500
Portland, OR 97214

    Attorney for Defendants Joshua Pomeroy, Multnomah County, Jesse Luna, and Sydney Watson

HERNANDEZ, District Judge:

    Now before me is the motion for summary judgment (doc. #62) filed by defendants Deputy Joshua Pomeroy ("Pomeroy"), Sergeant Jesse Luna ("Luna"), Deputy Sidney Watson ("Watson"), and Multnomah County (the "County").[1] Pomeroy, Luna, and Watson were employees of the Multnomah County Sheriff's Office ("MCSO") when the events allegedly giving rise to this cause of action occurred.

    Plaintiff Carole Crane ("Plaintiff" or "Crane"), acting pro se, did not file a response to Defendants' motion.[2] For the reasons set forth below, Defendants' motion is GRANTED as to

---

[1] Dennis Allen ("Allen") is also a named defendant in this action. An entry of default, however, was entered against Allen on February 11, 2010. Accordingly, the term "Defendants" as used hereinafter only refers to Pomeroy, Luna, Watson, and the County.

[2] Plaintiff was initially represented by Benjamin Haile ("Haile"). Haile, however, filed a motion to withdraw as Plaintiff's counsel on December 20, 2011, and the court granted Haile's motion on December 22, 2011.

Plaintiff's first, second, and third claims for relief, and Plaintiff's fourth and sixth claims for relief are DENIED as moot.[3]

## BACKGROUND

The facts giving rise to Plaintiff's allegations are closely interrelated with the facts leading to Allen's conviction for sexual misconduct. Accordingly, I find it worthwhile to provide a brief background of the events leading to Allen's conviction.

Allen was a corrections counselor with the MCSO from November 1988 to July 2008. During his tenure at MCSO, Allen "developed romantic feelings" for Plaintiff. Allen Decl., ¶ 4. Thereafter, Allen had an improper relationship with Plaintiff while employed at MCSO. On June 27, 2008, Plaintiff reported to MCSO authorities that she had been sexually abused by Allen. Lindstrand Decl., ¶ 8. On July 8, 2008, Allen was placed on paid administrative leave and "because it was likely that [he] would be terminated [for having a "romantic relationship" with an inmate], he retired as corrections counselor at MCSO on July 25, 2008. Allen Decl., ¶ 6; Dunaway Decl., Ex. 1, p. 1.; Id., Ex. 2, p. 1. Allen was eventually convicted for sexual misconduct on January 8, 2009. Dunaway Decl., Ex. 25, pp. 1-4; Allen Decl., ¶ 4.

Plaintiff filed this action on November 5, 2009, alleging the following five claims for relief: (1) violations of the Fourth, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 ("§ 1983") against Allen and Pomeroy; (2) violations of the Fourth, Eighth, and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 against Watson and Luna; (3) constitutional

---

[3] Plaintiff's fifth claim for relief alleged violations of ORS 659A.400-406 for discrimination in place of public accommodation. Plaintiff, however, voluntarily dismissed her fifth claim for relief on March 31, 2010. Accordingly, the parties do not argue, and I do not discuss, Plaintiff's fifth claim for relief.

violations pursuant to 42 U.S.C. § 1983 against the County; (4) violations of ORS 30.265 for battery, sexual harassment, and intentional infliction of emotional distress against the County; and (5) a claim for negligence pursuant to ORS 30.265 against the County.

**STANDARD**

Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. E.g., Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). An issue of fact is genuine only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A fact is material if it could affect the outcome of the suit under the governing substantive law. Id. at 248. The moving party need only demonstrate that there is an absence of evidence to support the non-moving party's case. Id. at 325. The burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. Celotex Corp., 477 U.S. at 324.

Rule 56(e)(2) of the Federal Rules of Civil Procedure ("Rule") requires a party opposing summary judgment to "set out specific facts showing a genuine issue for trial." "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255). The non-moving party, however, must come forward with more than "the mere existence of a scintilla of evidence." Anderson, 477 U.S. at 252. Thus, "[w]here the record taken as a whole could not lead a rational trier of fact to find for

the nonmoving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted).

"If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials–including the facts considered undisputed–show that the movant is entitled to it . . . ." Fed. R. Civ. P. 56(e)(3). "In the absence of specific facts, as opposed to allegations, showing the existence of a genuine issue for trial, a properly supported summary judgment motion should be granted." Nilsson, Robbins, et al. v. Louisiana Hydrolec, 854 F.2d 1538, 1545 (9th Cir. 1988).

## DISCUSSION

### I. Fourth Amendment Claim Against Pomeroy

Plaintiff's first claim for relief alleges, among other things, that Pomeroy violated her Fourth Amendment right to be free from unreasonable seizure pursuant to § 1983. Compl., ¶¶ 26-30. Specifically, the complaint alleges Pomeroy violated Plaintiff's right "to be free from an unreasonable seizure" because he was aware of Allen's misconduct and "disregard[ed] his duty to protect" her. Id. For the reasons that follow, I conclude there are no triable issues of fact supporting Plaintiff's claim.

Section 1983 does not create any substantive rights but "is the vehicle whereby plaintiffs can challenge actions by governmental officials." Jones v. Williams, 286 F.3d 1159, 1162-63 (9th Cir. 2002) (citations omitted). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." E.g., West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted).

5 - OPINION AND ORDER

The Fourth Amendment protects "against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment, however, "applies only to those not yet convicted." E.g., Hawkins v. Comparet-Cassani, 251 F.3d 1230, 1238 (9th Cir. 2001) (citing Graham v. Connor, 490 U.S. 386, 395 (1989)); Pierce v. Multnomah Cnty., Or., 76 F.3d 1032, 1045 (9th Cir. 1996) (holding "the Fourth Amendment sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest"). The undisputed facts show Plaintiff was a convicted felon when the actions giving rise to her Fourth Amendment claim occurred. Dunaway Decl., Ex. 14, p. 1; Id., Ex. 22, pp. 2-3. Accordingly, the constitutional protections guaranteed by the Fourth Amendment do not apply to Plaintiff and her claims against Pomeroy necessarily fails.

**II. Eighth and Fourteenth Amendment Claims Against Pomeroy**

Plaintiff's first claim for relief also alleges violations of her Eighth and Fourteenth Amendment rights pursuant to § 1983. Compl., ¶¶ 26-30. Plaintiff alleges Pomeroy violated her Eighth Amendment right to be free from cruel and unusual punishment. Plaintiff further alleges Pomeroy violated her right of equal protection secured by the Fourteenth Amendment because he was aware of Allen's misconduct and disregarded his duty to protect her. Id.

**A. Eighth Amendment Right to Be Free From Cruel and Unusual Punishment**

The Eighth Amendment prohibits cruel and unusual punishment by prison officials. Farmer v. Brennan, 511 U.S. 825, 837 (1994). Prison officials violate the Eighth Amendment's prohibition of cruel and unusual punishment only if they exhibit "deliberate indifference." Id. A prison official acts with deliberate indifference if he "knows of and disregards an excessive risk

to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. at 838.

Defendants contend there is no evidence demonstrating Pomeroy was "deliberately indifferent" to Allen's misconduct. I agree.

Nothing in the record shows Pomeroy was aware of Allen's improper interactions with Plaintiff. Allen testified he "always made a conscious effort to conduct [himself] with Ms. Crane in such a way that no one in Corrections, Corrections Health, or any other civilian employees, like chaplains or other counselors, would know or even suspect that [his] feelings toward Ms. Crane were not completely professional." Allen Decl., ¶ 5. He also testified that he "was careful to hide [his] romantic relationship with Ms. Crane." Id. Pomeroy himself testified he was not aware of any sexual abuse by Allen. He testified he did not "observe any behavior . . . or hear any comments by . . . Allen or . . . Crane that would have led [him] to believe that [Allen's] relationship with . . . Plaintiff was not professional." Pomeroy Decl., ¶ 7. He also testified that he did "not hear or see anything during the times that Plaintiff was meeting with Allen" and that none of the inmates ever told him about "anything suspicious, including any kind of sexual abuse" by Allen. Id., ¶ 8. In fact, Pomeroy stated he was "very surprised when [he] found out about the allegations . . . brought against . . . Allen by Ms. Crane." Id., ¶¶ 9-10. Indeed, Plaintiff herself testified she did not know whether Pomeroy was aware of what was "going on" between her and Allen, did not talk to Pomeroy about "what was going on with [her and] . . . Allen," and was unaware if Pomeroy even saw the sexual interactions between her and Allen. Dunaway Decl., Ex. 26, pp. 95-98.

7 - OPINION AND ORDER

The undisputed evidence before me is insufficient to create a triable issue of material fact to support Plaintiff's Eighth Amendment claim for relief against Pomeroy. Accordingly, Defendant's motion for summary judgment against Plaintiff's Eighth Amendment claim as it relates to Pomeroy is granted. See Farmer, 511 U.S. at 844 (prison officials who lack knowledge of a risk cannot be said to have inflicted punishment under the Eighth Amendment).

**B. Fourteenth Amendment Right to Equal Protection**

Plaintiff's first claim for relief also alleges Pomeroy violated her right to equal protection under the Fourteenth Amendment by disregarding his duty to protect her from Allen's misconduct. Compl., ¶¶ 26-30. Defendants contend Plaintiff fails to state a claim for violation of her right to equal protection under the Fourteenth Amendment because she fails to allege that Pomeroy chose to disregard his duty on the basis of Plaintiff's membership in a protected class and is unable to identify how her equal protection rights were violated. Defendants' arguments are well taken.

"To state a § 1983 claim for violation of the Equal Protection Clause a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." Thorntom v. City of St. Helens, 425 F.3d 1158, 1166 (9th Cir. 2005) (quotations and citations omitted). As an African-American, Plaintiff belongs to a protected class. See, e.g., McDonald v. Santa Fe Trail Transp. Co., 427 U.S. 273, 288 n.19 (1976); see also Darden v. Alameda Cnty. Network of Mental Health Clients, No. C-95-0783 MHP, 1995 WL 616633, at *2 (N.D. Cal. 1995) ("With respect to race, plaintiff is correct that blacks are a protected class under the language of . . . the Fourteenth Amendment . . . .").

8 - OPINION AND ORDER

The record is devoid of any evidence demonstrating Pomeroy discriminated against Plaintiff because she was African-American. Plaintiff herself testified that she did not know if she was treated differently because of her race. Dunaway Decl., Ex. 26, pp. 191-92. Based on the evidence before me, no reasonably jury could find that Pomeroy discriminated against Plaintiff based on her membership in a protected class. Accordingly, Defendants' motion for summary judgment against Plaintiff's Fourteenth Amendment equal protection claim as it relates to Pomeroy is granted.

### III. Fourth, Eighth, and Fourteenth Amendment Claims Against Watson and Luna

Plaintiff's second claim for relief alleges retaliation by Watson and Luna in violation of her Fourth, Eighth, and Fourteenth Amendment rights pursuant to § 1983. With respect to Watson, Plaintiff alleges Watson retaliated against her for reporting the wrongful acts of Allen. Compl., ¶ 37. With respect to Luna, Plaintiff alleges that "[b]y failing to adequately supervise and discipline deputies under his supervision, Sergeant Luna caused retaliation in violation of her constitutional rights . . . ." Id., ¶¶ 42, 42A. For the reasons that follow, Plaintiff's claims against Luna and Watson fail.

#### A. Fourth Amendment Claim Against Luna and Watson

As noted above, Plaintiff was a convicted prisoner at the time the events giving rise to her allegations occurred and accordingly, Plaintiff may not bring a Fourth Amendment claim against either Luna or Watson. Hawkins, 251 F.3d at 1238 (holding that as a "convicted prisoner, [plaintiff] himself [could not] bring a Fourth Amendment claim, which applies only to those not yet convicted"). Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment claim against Watson and Luna is therefore granted.

9 - OPINION AND ORDER

**B. Eighth and Fourteenth Amendment Claims Against Watson and Luna**

Plaintiff's second claim for relief also alleges retaliation in violation of her rights protected by the Eighth and Fourteenth Amendments. Specifically, Plaintiff alleges Watson and Luna violated her right to be free from cruel and unusual punishment pursuant to the Eighth Amendment and violated her right to be free from summary punishment pursuant to the Fourteenth Amendment. Compl., ¶¶ 31-42A. Plaintiff alleges Watson and Luna retaliated against her for, among other things, denying her bed sheets, refusing to give her band aids, placing her in a cell "littered with garbage with only hot running water for four days," denying her "adequate clothing," throwing her hygiene kit and mail through a slot in her cell door, and being "unusually and unreasonably rough" when escorting her around. Compl., ¶¶ 31-42A.

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions [under section 1983 of this title] until . . . administrative remedies as are available are exhausted."[4] 42 U.S.C. § 1997e(a). "The PLRA attempts to eliminate unwarranted federal-court interference with the administration of prisons, and thus seeks to 'affor[d] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.'" Woodford v. Ngo, 548 U.S. 81, 93 (2006) (citations omitted). "[A] prison grievance suffices if it alerts the prison to the nature of the wrong for which redress is sought, and it need not include legal terminology or legal theories unless they

---

[4] The term "prison conditions" under 42 U.S.C. § 1997e(a) has been defined broadly as "the effects of actions by government officials on the lives of persons confined in prison . . . ." 18 U.S.C. § 3626(g)(2); Smith v. Zachary, 255 F.3d 446, 449 (7th Cir. 2001) ("In § 3626, Congress defines the term 'a civil action with respect to prison conditions' to mean either 'an action with respect to the conditions of confinement' or a suit arising from the 'effects of actions by government officials on the lives of persons confined in prison.'") (Citing 18 U.S.C. § 3626(g)(2)).

10 - OPINION AND ORDER

are in some way needed to provide notice of the harm being grieved." Jones v. Lewis, 334 Fed. Appx. 66, 68 (9th Cir. 2009) (citing Griffin v. Arpaio, 557 F.3d 1117, 1120 (9th Cir. 2009)). "Exhaustion is no[t] . . . left to the discretion of the district court, but is mandatory.  Prisoners must . . . exhaust all available remedies, not just those that meet federal standards." Woodford, 548 U.S. at 84 (internal quotation marks and citations omitted); Reynolds v. Curry Cnty. Sheriff Dept. Emp., Civil No. 06-6302-KI, 2008 WL 5146122, at *2 (D. Or. 2008) ("The PLRA exhaustion requirement requires 'proper exhaustion,' which means compliance with all deadlines and 'other critical procedural rules.'")  (Citation omitted).

      The MCSO has an administrative grievance system for prisoner complaints.  Dunaway Decl., Ex. 9, p. 13.  In order to satisfy the MCSO grievance process, prisoners are required to comply with the grievance guidelines, which require, among other things, prisoners to report the alleged grievance to a staff member within five days of the date the alleged grievance occurred. Id.  The MCSO grievance procedure further requires inmates to appeal the resolution of their grievances within five days if the inmates feel the resolution is unsatisfactory.  Id.; Id., Ex. 18, p. 6.

      The evidence before me shows Plaintiff filed only two grievances related to her second claim for relief, one for having "no cold water in [her] cell for 2 days" and the other for not "receiv[ing] a clean white jump suit after clothing exchange." Id., Ex. 12, pp. 1-6.  The evidence, however, shows Plaintiff's two grievances were resolved.  Specifically, the record demonstrates Plaintiff was offered a white jump suit, but had refused it, and was relocated to a cell with cold water.  Id., Ex. 12, p. 1.  More important, the record is devoid of any evidence showing Plaintiff appealed the resolution of her two grievances.  Id.; Powers Decl., ¶ 3.

11 - OPINION AND ORDER

Based on the evidence before me, summary judgment in favor of Defendants is proper. The record shows Plaintiff did not file grievances for the majority of the events allegedly giving rise to her second claim for relief. With respect to the events for which Plaintiff did file grievances, the evidence demonstrates Plaintiff's grievances were resolved, and moreover, demonstrates Plaintiff did not appeal the resolution of her grievances as required under the MCSO grievance process. In other words, the undisputed evidence shows Plaintiff failed to complete the prison grievance process prior to filing this action, and thereby failed to exhaust her administrative remedies before filing this action. Plaintiff's failure to do so is fatal to her second claim for relief against Luna and Watson. See Jones v. Lewis, 334 Fed. Appx. at 69 (inmates must "exhaust administrative remedies prior to filing suit in federal court") (citing McKinney v. Carey, 311 F.3d 1198, 1199 (9th Cir. 2002)).

### C. Lack of Retaliatory Intent

Defendants also argue Plaintiff's second claim for relief fails against Luna because there is no evidence that Luna failed to adequately supervise and discipline the deputies under his supervision. I agree.

"A prisoner suing prison officials under section 1983 for retaliation must allege that he was retaliated against for exercising his constitutional rights and that the retaliatory action does not advance legitimate penological goals, such as preserving institutional order and discipline." Barnett v. Centoni, 31 F.3d 813, 815-16 (9th Cir. 1994) (citing Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir. 1985)). With respect to supervisors, the Ninth Circuit has previously stated that "[l]iability under section 1983 arises only upon a showing of personal participation by the defendant. A supervisor is only liable for constitutional violations of his subordinates if the

supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citations omitted). "There is no respondeat superior liability under section 1983." Id.

It is undisputed that at all relevant times, Luna was a Corrections Sergeant at MCSO. Luna Decl., ¶ 1. Nothing in the record, however, shows that Luna participated in, directed, or knew of any retaliatory actions by his deputies and failed to prevent them. Johnson v. Avenal State Prison Warden, No. CV F 04 5845 AWI LJO P, 2007 WL 135678,a t *2 (E.D. Cal. 2007) (holding plaintiff did "not alleged any facts indicating that [defendant] personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or implemented a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation") (quotation marks and citations omitted). Contrary to Plaintiff's allegations, Luna testified that "[n]one of the actions [he] took during 2008 regarding [Plaintiff] were taken to retaliate against her because she reported the conduct of [Allen]." Luna Decl., ¶ 2. In addition, Plaintiff herself testified she did not even know if Luna was retaliating against her for "turning [Allen] in." Dunaway Decl., Ex. 26, p. 156.

With respect to Watson, Plaintiff alleges he retaliated against her "for reporting . . . Allen sexually harassed and abused her." Compl., ¶ 42. Plaintiff, however, merely testified that Watson's "whole demeanor got real nasty toward[s her]" after she told him she was "probably going to have [him] as a witness [at trial] or something like that." Dunaway Decl., Ex. 26, p. 165. In addition, Plaintiff specifically testified she did not know the motive behind Watson's alleged retaliatory actions. Dunaway Decl., Ex. 26, pp. 167-68. Indeed, Plaintiff specifically

13 - OPINION AND ORDER

testified that she "felt" Watson's actions were "some form of retaliation," but did not know why Watson was in fact "retaliating" against her. Id. Based on the evidence before me, there is simply no triable issue of fact as to whether Watson retaliated against Plaintiff for reporting Allen's misconduct. See Madrid v. Woodford, 327 Fed. Appx. 684, 685 (9th Cir. 2009) ("[A] prisoner alleging retaliation must show, inter alia, that a state actor took adverse action against him because of the prisoner's protected conduct.") (Citing Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir.2005)).

In sum, the record is devoid of any evidence creating a triable issue of fact as to whether Luna participated in or directed the violations alleged in Plaintiff's second claim for relief, or knew of the violations and failed to prevent them. In addition, there is no triable issue of fact that Watson retaliated against Plaintiff for reporting Allen's misconduct. See Abernathy v. Cook, 172 F.3d 875 (9th Cir. 1999) (a prisoner's "mere allegation of retaliatory motives is insufficient to defeat a motion for summary judgment") (citations omitted). Defendants' motion for summary judgment against Plaintiff's second claim for relief against Luna and Watson is granted.

## IV. Third Claim for Relief Against the County

Plaintiff alleges constitutional rights violations by the County pursuant to § 1983 based on its policies, patterns, or practices. Compl., ¶¶ 43-47. Specifically, Plaintiff alleges she was "deprived of her Fourth Amendment right to be free from unreasonable seizure and her Eight [sic] Amendment protection from cruel and unusual punishment" because the County failed to adequately supervise, train, and discipline MCSO employees, was "aware of and consciously disregarded the risk that . . . [Plaintiff] would be subjected to retaliation," and "failed to take adequate measures" to protect Plaintiff. Id., ¶¶ 44-46.

As noted above, Plaintiff's allegations of violations pursuant to the Fourth Amendment lack merit because she was a convicted felon at the time her cause of action arose and accordingly, the Fourth Amendment does not apply to her.  E.g., Hawkins, 251 F.3d at 1238 (Fourth Amendment "applies only to those not yet convicted").  With respect to Plaintiff's allegations that her Eighth Amendment rights were violated, they also fail.

Pursuant to the Eighth Amendment, prisoners have the right to be free from sexual abuse. See, e.g., Farmer, 511 U.S. at 834; Schwenk v. Hartford, 204 F.3d 1187, 1197 (9th Cir. 2000) ("In the simplest and most absolute of terms, the Eighth Amendment right of prisoners to be free from sexual abuse was unquestionably clearly established prior to the time of th[e] alleged assault, and no reasonable prison guard could possibly have believed otherwise.").  Under § 1983, however, "local governments are responsible only for their own illegal acts.  They are not vicariously liable under § 1983 for their employees' actions." Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (internal citations and quotations omitted).  The Ninth Circuit has previously stated:

> A local government entity is liable under § 1983 when action pursuant to official municipal policy of some nature cause[s] a constitutional tort.  In addition, a local governmental entity may be liable if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights. The custom or policy of inaction, however, must be the result of a conscious or deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.
>
> A local governmental entity's failure to train its employees can also create § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom those employees are likely to come into contact. [F]or liability to attach in this circumstance the identified deficiency in a [local governmental entity's] training program must be closely related to the ultimate injury.  In other words, a plaintiff must show that his or her constitutional injury would have been avoided had the governmental entity properly trained its employees.

15 - OPINION AND ORDER

Lee v. City of Los Angeles, 250 F.3d 668, 681 (9th Cir. 2001) (internal quotations and citations omitted).

Here, there is simply no evidence demonstrating the County had customs or policies of inaction resulting from conscious or deliberate choice by any official responsible for establishing final policy. In addition, the record is devoid of any evidence indicating the County failed to train employees in such a way that amounted to deliberate indifference to Plaintiff's rights. To the contrary, the record before me shows the County properly trained its employees. For example, the record demonstrates MCSO employees received training in MCSO policies and procedures. Linstrand Decl., ¶¶ 3-6; Pomeroy Decl., ¶ 9. The record shows MCSO policies and procedures comply with the Prison Rape Elimination Act ("PREA"), 42 U.S.C. § 15602, set forth the rights of inmates, prohibit harassment and sexual misconduct by MCSO employees, require employees and inmates to report all suspected sexual activity, and preclude retaliation against inmates who report discrimination or sexual misconduct.[5] Linstrand Decl., ¶¶ 3-6; Dunaway Decl., Ex. 18, pp. 2-3, 8. In fact, Allen himself testified that he had received "multiple trainings" about "discrimination and harassment-free workplace" and that he knew his actions were "outside clearly defined work place rules." Allen Decl., ¶ 6. There is simply no triable issue of fact that the County acted with deliberate indifference to Plaintiff's rights in this instance.

The undisputed evidence also demonstrates County employees took timely action following Plaintiff's reports of sexually harassment by Allen. Dunaway Decl., ¶ 24, pp. 5-12; Linstrand Decl., ¶ 8. The record shows Plaintiff reported Allen's misconduct on June 27, 2008,

---

[5] PREA establishes a zero-tolerance standard for the incidence of prison rape and "implement[s] national standards for the detection, prevention, reduction, and punishment of prison rape. 42 U.S.C. § 15602(1), (3); Lindstrand Decl., ¶¶ 3-5.

and that same day, June 27, 2008, an investigation into Plaintiff's allegations was commenced. Compl., ¶ 19; Dunaway Decl., Ex. 24, p. 5. Although Allen was on vacation at the time Plaintiff reported his misconduct to the County, the investigation continued up through the time of his arrest on July 7, 2008, and proceeded even after he was placed on administrative leave on July 8, 2008. Dunaway Decl., Ex. 1, p. 1; Id., Ex. 24, pp. 5-6. In addition, the undisputed evidence shows that on June 27, 2008–the same day Plaintiff reported Allen's misconduct–Plaintiff was placed in protective custody in a single-person cell and pursuant to her request, remained in protective custody and was even placed on "walk alone status." Id., Ex. 14, pp. 22-23; Id., Ex. 15, p. 2; Id., Ex. 20, pp. 1-3.

Finally, there is no evidence the County was aware of or consciously disregarded the risk that Plaintiff would be retaliated against or that Plaintiff was subject to retaliation because of the County's failure to protect Plaintiff. Compl., ¶¶ 46-47. As discussed above, there is no genuine issue of material fact as to whether Plaintiff was subject to any retaliation for exercising her constitutional rights. It follows that Plaintiff's claim that the County was aware of and consciously disregarded the risk that she would be subject to retaliation or that the County failed to protect Plaintiff from any retaliatory acts by MCSO employees necessarily fails.

Plaintiff's bald allegations are simply unsupported by the record. The County is therefore entitled to summary judgment on Plaintiff's third claim for relief.

**V. Fourth and Sixth Claims for Relief Against the County**

Lastly, the complaint alleges this court has pendant and supplemental jurisdiction over the state law claims alleged in Plaintiff's fourth and sixth claims for relief. Compl., ¶ 4A. Plaintiff's fourth claim for relief alleges battery, sexual harassment, and intentional infliction of emotional

distress pursuant to ORS 30.265. Id., ¶¶ 48-51A. Plaintiff's sixth claim for relief alleges negligence pursuant to ORS 30.265. Id., ¶¶ 55-59.

The court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).[6] Once supplemental jurisdiction has been established under 28 U.S.C. § 1367(a), "a district court, in its discretion, may choose to consider pendant state claims even after the original basis for federal jurisdiction has disappeared. The court may also dismiss remaining state law claims." E.g., Martin v. Rubel Enter., 19 F.3d 1440, 1440 (9th Cir. 1994). 28 U.S.C. § 1367 specifically provides the district court may decline to exercise supplemental jurisdiction if:

> (1) the claim raises a novel or complex issue of State law[;] (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction[;] (3) the district court has dismissed all claims over which it has original jurisdiction[;] or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

As discussed above, Plaintiff's federal constitutional claims fail to survive summary judgment. Therefore, all claims over which this court had original jurisdiction no longer remain. The Ninth Circuit has "often repeated, that 'in the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise

---

[6] 28 U.S.C. § 1367 provides in relevant part:

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

jurisdiction over the remaining state-law claims.'" Acri v. Varian Assoc., Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (citation omitted). Having resolved all claims over which it had original jurisdiction, this court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. See 28 U.S.C. § 1367(c)(3). Accordingly, Plaintiff's fourth and sixth claims for relief are dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (doc. #62) as to Plaintiff's first, second, and third claims for relief is GRANTED. Defendants' motion for summary judgment as to Plaintiff's fourth and sixth claims for relief is DENIED as moot.

IT IS SO ORDERED.

Dated this 22nd day of February, 2012.

    /s/ Marco A. Hernandez
MARCO A. HERNANDEZ
United States District Judge